May it please the Court, my name is Timothy Wickmer and I represent the petitioner Adalberto Hernandez-Garcia. We would respectfully ask the Court to vacate and set aside the ruling of the BIA ordering removal and denying relief of cancellation of removal for non-permanent residents. We would ask that you would find that Mr. Hernandez-Garcia has met the legal standard for cancellation of removal and to remand the case to the BIA for the decision of whether to grant cancellation in the exercise of discretion according to the appropriate law and precedent of this Court and the BIA. Well, it seems to me this is an argument foreclosed by Garcia-Torres. Your Honor, respectfully we would say no and here's why. The state of the case law in the Eighth Circuit is mixed at the moment. In fact, we are very glad for the opportunity to argue this because there is case law that clearly states that this claim is reviewable and there is some case law... Not clearly. Well, those particular cases perhaps. In the course of upholding the denial of relief, there's some language tossed out that can be read that way. Certainly, Your Honor, there are some cases... Garcia-Torres is much more analytical on the issue. Perhaps, but there is a recent case that we cited in a Rule 28J letter, Zia v. Holder. In a sense, the following cases all stand for the proposition of jurisdiction and I'll address, Your Honor, specific mention that there's language tossed out and what that means in just a second. But the cases we cite in our brief, Guled v. Mercasey, 515F3872, that's a 2008 case. Zia v. Holder is a 2014 case and it's very instructive, 744F3577. Even Gomez-Perez v. Holder, which the government itself cites in its own brief on page 13, which again stands for the proposition that there's review, it specifically states that despite the language of 8 U.S.C. 1252 and A2D, it does not preclude questions of Constitution or of law. How can the application of the facts to the law possibly not fall within the Real ID Act jurisdictional precluder? Because this circuit has said that it does not. Specifically, we possess jurisdiction... Well, it's dicta. No case has held, has it? Hasn't every case that's said it also gone on to deny relief? Yes, but some of the cases that have denied relief have not denied on the basis of the so-called cloaking argument, like you're cloaking a discretionary decision in constitutional or legal terms. If we take a look at Leah... Forget about what we've said in sort of casually. What's the basis? What's the analytical basis? The analytical basis is this, Your Honor. What would the American Law Institute say on the question of the notion that the application of the law to the facts and the final determination of extreme hardship is not left to the agent, is not unreviewable under the Real ID Act? Yes, Your Honor. The cancellation of removal statute has as a predicate initial determination of whether a person meets exceptional and extremely unusual hardship. That is a legal standard. The court in Zia held it to be a legal standard. So one of the things that this court has said in many cases is that this issue... What's legal about it other than the determination in a particular case whether it existed? Because the determination of hardship is a standard of law. You have to prove hardship in order to meet the qualification for cancellation. You mean it wouldn't be a jury issue in a civil case, civil tort case? The facts that underlie the hardship decision determined by the trier of fact would be a jury decision. Whether those specific set of facts... You say we have effectively nullified the Real ID Act as to this issue. No, Your Honor. What's left? If every time the facts are found, then the court gets to decide whether that's extreme hardship. That's nullifying the Real ID Act. There are two ways, Your Honor, respectfully, that it is not. Number one, if you're just talking about application of law to fact, what you have is a situation where the trier of fact calls the facts, and there they are in the record. Their analysis, their application is part of the legal standard of hardship. So negligence should never get to a jury. The jury should get a special interrogatories on the facts underlying the case, and the court decides negligence. I am so hyper-specialized in immigration law, Your Honor, that the procedures of tort law... I concede that it probably would be described as a mixed question of law and fact in most contexts outside this. But, you know, you're shifting from the agency to the courts this issue. No, Your Honor, I am not. Well, what's wrong? I am asking the court to exercise its power of review of a removal order, which it has under... Well, what's wrong with this one? Well, in addition to the application of the law to the facts, you also have the circumstances of whether the judge has properly developed the record. In the Zia v. Holder case... That's not argued. That's not an issue. It is, Your Honor. It is, Your Honor, because the court... Well, where is it argued in your brief? I didn't see that. Failure to develop the record, that's not... You know, this isn't Social Security. The immigration, you know, you've got the burden to develop your record. Yes, Your Honor. We cited Alcori v. Ashcroft, Toon v. Gonzalez, Lopez-Ainar... What is it that you say that should have been done that wasn't in terms of developing the record? Very key elements of the hardship factors were not analyzed in the IJ's decision or the VA's decision specifically. There's nearly 50 pages of documentary evidence in the record dealing with the narco-related violence in Mexico, as it would relate to the two U.S. citizen children, ages 2 and 6, that was not discussed meaningfully by the judge. So now you're saying we nitpick the opinions. If you don't review everything. I mean, you know, we've got countless regimes, including every time we review a bench-tried civil case from the district courts, where we do not require perfection or comprehensiveness in opinions. To address your question of where it's in our brief, when we argue the due process violation, we cite Alcori v. Ashcroft, where they found the judge had a duty to develop the record. The Zia v. Holder case also cites to that case and said the judge failed in the duty to develop the record. And the Zia case specifically upheld, and I know government counsel was the attorney in that case, but in the Zia case the government won on solely the issue of challenging the discretionary component, but the court did find that there were constitutional questions, which is an even broader inroad to prioritize circuit precedent of recent note, and that there were questions of law. The court cited specifically in Section 2 of its discussion there, 2A, that there were sufficient questions of law, in fact, brought up. Let me ask you this. Back to the narco-violence that you were discussing. You know, even if we thought that that wasn't adequately addressed in the decision, aren't you asking us again to weigh the factors, which would be weighing the hardship factors? Isn't that a discretionary issue? The weighing of the factors in some sense is a mixed question of law and fact, but when it comes to whether a factor is considered meaningfully at all, that's a due process, that's a question of law. If the law says in a matter of IGA. . . It's not a due process question. It is when the agency does not follow its own precedent, does not consider all the evidence, and there's harm. That's not a due process issue. That's an ad law issue. Okay. Well, I mean, it's. . . What Supreme Court case has said that an agency departing from its precedent violates due process? The Supreme Court in Lopez v. Heiner states it more generally, but the conclusion. . . What I said was the conclusion that I was reaching, but Lopez-Heiner says that the case has to be fundamentally fair. Plyler v. . . Of course. Nobody denies that. You're making a specific argument when the agency failed to follow its precedents, and that violated due process. Their precedents. . . is a constitutional error. The Lopez case talks about the precedent in. . . The Lopez is relevant for the precedent in the area of cancellation of removal. Cancellation of removal cases require that all of the relevant factors be considered. Cancellation. . . Wait, wait, wait. Just stop. Where does that come from? Matter of IJ 20 INN Decision 880, BIA 1994. Relevant factors, though not extreme in and of themselves, must be considered in the aggregate in determining hardship. Matter of Vercina 23 INN Decision 460. So when the Supreme Court says in a Fourth Amendment case that probable cause turns on the totality of the circumstances, it's a constitutional violation for the district court not to consider something, in its opinion, that was there in the record. Or in a sentencing case, where the Supreme Court says you've got to look at everything in determining substantive reasonableness. You know, this just isn't the way the appellate process works. We don't require perfection. The agency says consider everything. We assume the IJ did that and did not consider what wasn't specifically mentioned worthy of mention. That's not a constitutional issue. Your Honor, I appreciate your skepticism of the case, obviously. But here's the thing. You've got no authority for the breadth of the argument. The argument's in the briefs. And in responding to your questions, Your Honor, and perhaps I'm throwing off a little bit of my logical flow, but when you put an alien to the burden of proof, the alien has a burden of proof to prove exceptional and extremely unusual hardship. That's a legal platform. Once that's reached, the BIA can decide discretion. But if you say to that alien, you have the burden of proof, but your voluminous evidence of hardship in Mexico, of drug violence, of the fact that your sister was robbed, of the fact that your family is going to be now nine people in a two-room dirt shack, the fact that you didn't have more than a primary education, these things are incredibly relevant. And to just assume that the IJ did its job, it goes against the whole reason why the Court of Appeals exists. Why is there any review of a removal order if we can assume that the agency does its job? Well, there used to be a timeless which created this Court, said it didn't like that level of review, and took it away. But it specifically allowed you to review questions of law and constitutional questions, which include, according to most recent precedent, the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility. The government cites it. It's in Goulet v. Bukhesi. It's in Zia v. Holder. It's all over recent precedent. There is a confusion in the circuit court's precedent, respectfully speaking, because since the entire relief is discretionary, there are some things within this determination that are legal, and there are some that are discretionary. And until the court properly defines what the boundaries of this review are, we're going to have cases like this all the time. I've had many cases in the last few years of cancellation, and a lot of them are getting dismissed for lack of jurisdiction. Some go on. They get no argued. For this one, it was the first argument we've had on cancellation in quite a while. And there was another one scheduled this week that went no argued. Panels are coming down with different things. You might refer to it, Your Honor, respectfully, as we threw away some language over here. But in Zia, it's much more than that, and I really urge the Court to examine this. Perhaps clarity is certainly welcome in this area of law, but we would feel that in order to really review whether the agency is doing its job when a person could be suffering death, murder, robbery, hardship conditions that are protected by the INA, if the Court doesn't review these cases, the government can have any kind of process it wants. And if that's the regime that the Court wants, then that's what it's going to get by dismissing these cases. No, it can't have any kind of process. Its ultimate decisions, as they're resulting from a constitutionally fair process, are not subject to judicial review. That's what Congress said. In 8 U.S.C. 1252A2D does not preclude review in this case. And if it's possible, I'd like to reserve some time for rebuttal. Ms. Barnum? May it please the Court, Ann Barnum for the respondent, Attorney General Eric H. Holder, Jr. Your Honors, 1252A2B does preclude the Court from exercising jurisdiction over the decision of the agency regarding exceptional and extremely unusual hardship to qualifying relatives should an alien be removed from the United States to their native country or country of removal. Well, how does the government construe who led it? Well, the government believes that this Court has held again and again that it does not have... No, no. Answer the question. Is Goulet simply wrong and properly corrected by Garcia-Torres, or is the government satisfied that they can be harmonized? I'm sorry, Your Honor. I would have to examine those cases one beside the other to determine and answer the Court's question. Well, what about the more recent Zia case that was just cited to us this week? How do you reconcile that with Garcia-Torres? Well, the Court and Zia found that there was not the establishment of the exceptional and extremely unusual hardship. Well, but the jurisdictional issue, the Court said that there was... In Zia, they said we had jurisdiction to consider it, and in Garcia-Torres, we said we didn't. So I'd like you to tell me what's the difference in jurisdictional terms, not in terms of the ultimate conclusion. I believe that the cancellation of removal, the statute is clear. The case law is predominantly clear that the Court does not have jurisdiction over the hardship determinations. And so why did Zia say a month ago that there were claims there that, while ultimately unpersuasive, allow us to review the petition inasmuch as constitutional and legal issues are raised? What was different about Zia from Garcia-Torres, where they were allowed to review it? The finding that there were colorable constitutional and legal issues, which there are in this case. And what were they? What were they in Zia? I'm sorry, Your Honor. I'm going to have to get back to you on that as well. All right. Thank you. Go ahead. So the government sees none of counsel says confusion in our cases or anything requiring clarification, or the government is just taking a buy on the question and hoping to win this case? No. The government believes that the exceptional and extremely unusual hardship standard is precluded from jurisdiction by the courts of appeals because, as the Supreme Court has held, the discretionary decision of the exceptional and extremely unusual hardship standard is purposely a very high burden for the alien to prove. I'm sure that this Court has seen. That's not a jurisdictional argument. That's a merit argument. Well, it is an extremely high standard purposely set by Congress. All right. So that argument concedes we have jurisdiction to see whether the high standard was met. No. That has been removed from review by the Congress because... we could still review issues of constitutional law and law written in there to their dismay, coerced, compelled to write that in there because of the Supreme Court's prior decision. So what does it mean? It means unless the exercise of discretion is invidious for some reason that the Court does not have jurisdiction. Invidious? You mean like racial? Yes. Yes. The agency has wide discretion to determine the hardship, and that is the alien's burden in seeking this very unusual form of relief. I have a question for you on a different issue. In the transcript, there's a discussion that appears to be at the hearing, the transcript of the hearing. What looks like after the conclusion of the hearing, there's a lengthy discussion among the judge, the immigration judge, and the government's lawyer. It appears to be ex parte. It appears to discuss the merits of the case and make some fairly disparaging comments about the photographs and the living conditions. Do you have any concern that there's some violation of due process in the sense of the right to a fair hearing when there's an ex parte discussion in the transcript of that nature? No, Your Honor. I believe that both parties have determined and agreed that this was not any error. How did they agree? Yes. How did that happen? It's not on the record. Well, I believe that in the petitioner's brief that they do say that as well. So when the immigration judge says, you know, I don't care how poor they are, they ought to go buy two gallons of white paint and paint this house, and the petitioner's lawyer's not there, we just don't worry about that? Well, that is unfortunate that that was in the record, but the government would contend that it's harmless error. All right, thank you. Go ahead. Or not plain error, I suppose. I don't think it was argued. Yeah, I'm not sure. I don't think it's raised. Yeah, it's not. Okay. So the immigration judge, or the board in this case, did review the record de novo and made a de novo decision that the immigration judge correctly applied the standard and reached the determination that exceptional and extremely unusual hardship was not proved. The board did acknowledge that there were certainly hardships, and there almost always are hardships, but the standard is very high, and in this case the board correctly found that the immigration judge was correct in deciding that on the matter of hardship. Now, just on a moment on the colloquy, it looks like the hearing is over and counsel for the petitioners has left. Would the agency's regulations permit a motion to reopen based on the fact that this post-hearing colloquy demonstrates a biased decision-maker? Well, the petitioner could file a motion to reopen, certainly. I believe, in fact, in this case that it did, not on that basis, but that decision is not before the court because the petitioner did not file a petition for review of the denial of reopening. So to go back to the jurisdictional issue, which seems to me to be pretty key here, what would the petitioner in this case have had to do to bring the case more into the world of ZIA versus the world where you're saying we have no jurisdiction to review it? What would be different to give us jurisdiction to review this issue? On the exceptional and extremely unusual hardship determination, there would not be jurisdiction unless there was a colorable legal or constitutional claim that has not been raised here. Well, mixed questions of law and fact, this clearly is one. Civil law is all over the map on when those are for the court and when they're for the jury. So when you say there has to be a colorable question of law, why isn't this that? Well, the question, the – I'm going to leave aside the constitutional because I think that position, this contention is exaggerated. But the question of whether it's a reviewable question of law when in civil context it would be considered a mixed question of law. In fact, I think that's what our panels have struggled with. So you just dismiss it as a non-issue. Can you do any better than that? Well, the courts have held recently in another Ninth Circuit had said that if the – once the court finds that the legal standard has been met, then it doesn't have jurisdiction to weigh the facts. And, of course, that is what is being asked of the court in this case, to re-weigh the facts. That the accusation is that the board didn't properly weigh the facts. And there must be something much more than that. Well, let's say the IJ, rather than not commenting on all of the conditions in rural Mexico that the family might go back to, it's irrelevant whether the children would get any kind of an education in Mexico. Would that give us jurisdiction? Well, that would be one factor that I would not think that it would. We're not weighing factors when we're deciding jurisdiction. It's up or down. If it's a question of law, then we weigh its impact on the decision. But does that turn it into a question of law? Or if the IJ said, I don't care how much violence there is in rural Mexico. His family can go live in a city. Or, you know, made some other assertion with respect to conditions in Mexico that might not fit the norm of current thought in this country. You know, does that make it an issue of law? Well, the immigration judge and the board of the agency is required to look at a spectrum of factors. Yeah, and the BIA, I assume, is obligated to review what I'm talking about. That's correct. My question is whether Congress has shut us off from that review process. Yes, Your Honor. Unless there would be a colorable question of law raised. So if it was somehow racial, it would be reviewable. But when it's just social and economic, no matter how beyond the norm, let's say, it's unreviewable. Well, the alien's burden is to speak to conditions that are far above the norm. Well, I'm going to express a view that's beyond the norm in our country. When the judges think that's so far beyond the pale that the BIA should have reversed it. And you're saying we can't do that. The exceptional and extremely unusual hardship standard is barred from review in the courts of appeals. Thank you. Mr. Rickmore, have some time. Yes. He has one minute and 34 seconds. Thank you, Your Honor. With regard to jurisdiction, ZIA is holding and not DICTA. And ZIA itself provides, Your Honors, the exact scenario you're asking for. In ZIA, it noted that there were questions that were reviewable and questions that were not. And the question that was not was the denial in discretion by the petitioner. In this case, there is no discretionary denial. In fact, the BIA at 4 of the appendix notes they declined to decide all other issues of law. They limit it solely to whether they met the standard. It's not a discretionary denial. That's what separates this case from the bulk of the negative jurisprudence. Also, high standard, Your Honor, Judge Loken. Yes, it is a merits decision. This is what's reviewable under 1252A2D, specifically allowed under statute. Finally, counsel, in her argument with respect, is very conclusory. Just says no jurisdiction, no jurisdiction. In response to questioning, there hasn't been a whole lot of additional rationale given, and, therefore, this notion of invidious or some racial element would be completely novel. There's nothing in the immigration law or the review of prior immigration cases which would indicate that. And just for the sake of correcting the record and addressing your concerns, Judge Berry and Judge Loken, too, about the ex parte communication, and may I continue this past my time? It's some explanation. We did not have the case below. Another attorney had it. The colloquy that is in the transcript, which appears to be between the judge and the other attorney, the government attorney, of course, it's troubled us greatly. But the previous attorney investigated that, and apparently that wasn't the other attorney. It was the interpreter. Not that it makes it great or anything, but I think that attorney decided. We didn't waive it in our brief. It wasn't the government attorney. No, it was the in-court interpreter, and there's a little discussion. Ms. Castillo was the interpreter. It wasn't Melissa Castillo, no. It wasn't Melissa Castillo, the government attorney. So the transcript incorrectly attributed that to Ms. Castillo. Correct. So that was investigated. So what I would say is I think it is and is not relevant. The prior counsel had written to the board that they did not believe that that prejudiced the petition or what they responded below due to ex parte with lawyers. However, I think this court can consider it, and it's not waived in the sense of how the judge applied the law to the facts. So we're hamstrung by the previous writing, but I think that it is still a relevant fact. The court can consider it. I wanted to make sure that the court was aware that it wasn't the government attorney. I appreciate the clarification. Thank you. Thank you.